IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**DEUTSCHE BANK TRUST COMPANY AMERICAS,
AS TRUSTEE FOR THE REGISTERED HOLDERS
OF UBS COMMERCIAL MORTGAGE TRUST 2012-C1,
COMMERCIAL MORTGAGE PASS-THROUGH
CERTIFICATES, SERIES 2012-C1,**

  **Plaintiff,**

**v.**          **//   CIVIL ACTION NO. 1:17CV75**
               **(Judge Keeley)**

**MOUNTAIN WEST HOSPITALITY, LLC,**

  **Defendant.**

**and**

**WEST VIRGINIA STATE TAX DEPARTMENT,**

  **Intervenor-Plaintiff,**

**v.**

**DEUTSCHE BANK TRUST COMPANY AMERICAS,
AS TRUSTEE FOR THE REGISTERED HOLDERS
OF UBS COMMERCIAL MORTGAGE TRUST 2012-C1,
COMMERCIAL MORTGAGE PASS-THROUGH
CERTIFICATES, SERIES 2012-C1; and
MOUNTAIN WEST HOSPITALITY, LLC,**

  **Intervenor-Defendants.**

**MEMORANDUM OPINION IN SUPPORT OF ORDER
GRANTING MOTION TO INTERVENE [DKT. NO. 67]**

During an evidentiary hearing on November 28, 2017, the Court **GRANTED** the Motion to Intervene filed by the West Virginia State Tax Department ("the State"). As indicated in its November 30, 2017, Order Granting Motion to Intervene, this written opinion sets forth the Court's reasoning in support of that decision.

**DEUTSCHE BANK V. MOUNTAIN WEST** 1:17CV75

**MEMORANDUM OPINION IN SUPPORT OF ORDER
GRANTING MOTION TO INTERVENE [DKT. NO. 67]**

### I. BACKGROUND

**A.  Procedural Background**

On May 10, 2017, the plaintiff, Deutsche Bank Trust Company Americas, as Trustee for the Registered Holders of UBS Commercial Mortgage Trust 2012-C1, Commercial Mortgage Pass-Through Certificates, Series 2012-C1 ("Deutsche Bank"),[1] filed a complaint against the defendant, Mountain West Hospitality, LLC ("Mountain West") (Dkt. No. 1). Deutsche Bank alleged breaches of contract related to a $19,630,000 loan made to Mountain West, which is secured by deeds of trust covering the Hilton Garden Inn at 606 Emily Drive, Clarksburg, West Virginia ("Hilton Garden Inn Clarksburg"), and the Hampton Inn at 480 Plantation Drive, Elkins, West Virginia ("Hampton Inn Elkins") (collectively, "the Property"). According to Deutsche Bank, Mountain West has mismanaged the Property in a variety of way. As relevant to the loan documents, however, Mountain West allegedly triggered "Events of Default" by defaulting under its franchise agreements and failing to pay taxes to the City of Clarksburg. Id. at 7.

---

[1] Although the plaintiff contends that Deutsche Bank's successor-in-interest, RSS UBSCM2012C1-WV MWH, LLC, is now directing this litigation, there has been no motion for substitution, and the Court will continue to reference the plaintiff as "Deutsche Bank."

2

**DEUTSCHE BANK V. MOUNTAIN WEST**                                      **1:17CV75**

**MEMORANDUM OPINION IN SUPPORT OF ORDER**
**GRANTING MOTION TO INTERVENE [DKT. NO. 67]**

After a brief stay due to Mountain West's unsuccessful pursuit of bankruptcy proceedings (Dkt. Nos. 12; 14), on August 2, 2017, the Court appointed receivers to manage both the Hilton Garden Inn Clarksburg and the Hampton Inn Elkins pending Deutsche Bank's intent to schedule a non-judicial sale of the Property (Dkt. Nos. 25; 26). The substitute trustee initially scheduled sales of the Property on November 8, 2017, but the sales were later postponed to November 30, 2017 (Dkt. No. 52 at 4). On November 27, 2017, three days prior to the scheduled sales, Mountain West moved for a temporary restraining order ("TRO"), as well as a temporary and permanent injunction, to prevent the substitute trustee from carrying out the sales (Dkt. No. 45).[2]

The Court promptly denied Mountain West's motion for a TRO and scheduled an evidentiary hearing on the remaining request for injunctive relief (Dkt. No. 47). The parties presented evidence, and the Court heard argument on the motion on November 28, 2017, after which it denied Mountain West's motion for injunctive relief, concluding that Mountain West had failed to meet its burden to

---

[2] According to Mountain West's attorney, the defendant waited to seek injunctive relief because it had been seeking to file for bankruptcy – and take advantage of the concomitant stay – prior to the expiration of a six-month prohibition on doing so that was imposed by the United States Bankruptcy Court for the Middle District of Florida on July 31, 2017.

3

clearly and convincingly satisfy all four of the factors articulated in Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7 (2008), and Real Truth About Obama, Inc. v. Federal Election Com'n, 575 F.3d 342 (4th Cir. 2009), vacated on other grounds and remanded, 559 U.S. 1089 (2010), standard reaffirmed in 607 F.3d 355 (4th Cir. 2010) (Dkt. No. 54).

On November 29, 2017, again arguing that it would be irreparably harmed by such a sale, Mountain West noticed its interlocutory appeal from this decision (Dkt. No. 57), and moved the Court to stay the case and enjoin the sale of the Property pending appeal (Dkt. No. 55). The Court denied Mountain West's motion "for the reasons it denied Mountain West's motion for a temporary and permanent injunction" (Dkt. No. 62). The Court of Appeals for the Fourth Circuit then denied Mountain West's "emergency motion for injunction pursuant to Rule 8 of the Federal Rules of Appellate Procedure" (Dkt. No. 66).

**B.  Motion to Intervene**

Between the Court's appointment of receivers to manage the Property and Mountain West's attempt to prevent non-judicial sale of the Property, the State moved to intervene in this case on November 6, 2017 (Dkt. No. 36). In its motion, the State alleges

that, "[s]ince 2015 until the appointment of the receivers, [Mountain West] collected state consumer sales tax from its customers but failed to remit them to the State as required by law." Under West Virginia law, such taxes are "deemed to be money held in trust for the state of West Virginia." Id. at 2 (quoting W. Va. Code § 11-10-5j (West 2017)). The State therefore believes that Mountain West "converted at least $720,000 in collected but unremitted trust taxes," or that Deutsche Bank "may have converted or may still be holding some or all of these trust funds either by or through an account or accounts under its exclusive control." Id. The State sought leave to file a one-count complaint alleging a cause of action for conversion against both Deutsche Bank and Mountain West (Dkt. No. 36-1).

Although Mountain West did not respond, Deutsche Bank opposed the State's motion. It argued that intervention is inappropriate because the State essentially seeks to intervene as a creditor to collect pre-receivership taxes (Dkt. No. 41 at 1). According to Deutsche Bank, "[t]he State does not have a property interest in Plaintiff's case to support intervention, and the State's collection opportunities are not hindered or impaired in any way if intervention is disallowed." Id. at 2. Nonetheless, the Court granted the State's motion on November 28, 2017 (Dkt. No. 67).

**MEMORANDUM OPINION IN SUPPORT OF ORDER
GRANTING MOTION TO INTERVENE [DKT. NO. 67]**

## II. DISCUSSION

The Fourth Circuit favors "'liberal intervention' and preventing the 'problem of absent interested parties.'" Friend v. REMAC Am., Inc., No. 3:12cv17, 2014 WL 2440438, at *1 (N.D.W.Va. May 30, 2014) (quoting Feller v. Brock, 802 F.3d 722, 729 (4th Cir. 1986)). "Prospective intervenors bear the burden of demonstrating their right to intervene." In re Monitronics Int'l, Inc., MDL No. 1:13MD2493, 2015 WL 12748330, at *1 (N.D.W.Va. June 3, 2015) (citing Richman v. First Woman's Bank, 104 F.3d 654, 658 (4th Cir. 1997)). Under Fed. R. Civ. P. 24, the Court has discretion to allow intervention either as a matter of right or on a permissive basis. Stuart v. Huff, 706 F.3d 345, 349 (4th Cir. 2013). For the following reasons, the Court finds that the State is entitled to intervene under either standard.

**A.   Intervention as of Right**

The Court must grant a timely motion to intervene if the movant "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a).

In other words, to intervene as a matter of right, the movant must satisfy four requirements:

> (1) the application must be timely; (2) the applicant must have an interest in the subject matter sufficient to merit intervention; (3) the denial of intervention would impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest is not adequately represented by the existing parties to the litigation.

Scardelletti v. Debarr, 265 F.3d 195, 202 (4th Cir. 2001)(quoting United States v. S. Bend Cmty. Sch. Corp., 710 F.2d 394, 396 (7th Cir. 1983)), rev'd on other grounds, Devlin v. Scardelletti, 536 U.S. 1 (2002). The Court will address each of these elements in turn.

### 1. Timeliness

As a threshold matter, "the application must be timely." Id. The timeliness inquiry is governed by the following factors: "how far the suit has progressed, the prejudice that delay might cause other parties, and the reason for the tardiness in moving to intervene." Id. at 203 (citing Gould v. Alleco, Inc., 883 F.2d 282, 286 (4th Cir. 1989)). The most important factor is whether any delay will prejudice the existing parties. United States v. Exxonmobil Corp., 264 F.R.D. 242, 248 (N.D.W.Va. 2010).

7

Here, Deutsche Bank does not contest that the State's motion to intervene is timely (Dkt. No. 41 at 5), and the Court finds that there is no risk of prejudice to the existing parties. The State moved to intervene in the early stages of this proceeding, and less than six months after the case was originally filed. Because the Court has not yet entered a scheduling order, the claims asserted by the State will be governed by the same dates and deadlines applicable to Deutsche Bank's claims. Permitting intervention thus will not "derail [the] lawsuit within sight of the terminal." Scardelletti, 265 F.3d at 202 (quoting United States v. S. Bend Cmty. Sch. Corp., 710 F.2d 394, 396 (7th Cir. 1983)).

   **2.   Interest in the Subject Matter**

Next, the State must establish that it has "an interest in the subject matter sufficient to merit intervention." Id. A movant's interest in the subject matter of the litigation must be "a significantly protectable interest." Teague v. Bakker, 931 F.2d 259, 261 (4th Cir. 1991) (quoting Donaldson v. United States, 400 U.S. 517, 531 (1971)). For instance, "[a]n applicant has a significantly protectable interest in an action if it 'stand[s] to gain or lose by the direct legal operation' of a judgment in that

action." Ohio Valley Envtl. Coal., Inc. v. McCarthy, 313 F.R.D. 10, 18 (S.D.W.Va. 2015) (quoting Teague, 931 F.2d at 261).

But "[s]tanding to gain or lose by direct operation of a judgment may not be a necessary condition for an interest to be significantly protectable." Id. This Court has observed that "it requires only that [the movant] show that the disposition of the action 'may as a practical matter' impair their interests." Exxonmobil, 264 F.R.D. at 245 (quoting Little Rock Sch. Dist. v. Pulaski Cty. Special Sch. Dist., 738 F.2d 82, 84 (8th Cir. 1994)); see also JLS, Inc. v. Pub. Serv. Comm'n of W. Va., 321 F. App'x 286, 290 (4th Cir. 2009) (unpublished decision) ("Although Movants have no property rights at stake, the result of this suit will determine the level of competition that Movants will have, and hence, the amount of income they can expect to earn.").

Here, although Deutsche Bank argues that the receivers were not appointed by this Court to handle "pre-receivership claims" such as those levied by the State (Dkt. No. 41 at 3), the subject matter of Deutsche Bank's complaint is not limited solely to the appointment and operation of a receiver. Rather, the allegation that triggered the receivership was Deutsche Bank's contention that Mountain West breached the loan agreement by failing to pay its franchise fees and tax obligations (Dkt. No. 1 at 6-9).

Pursuant to the loan agreement, Mountain West was required to "deliver irrevocable written instructions to each of the credit card companies . . . to deliver all receipts payable" to an account "under the sole dominion and control of Lender," which in turn was transferred to a cash management account (Dkt. No. 1-1 at 41). Mountain West could pay its obligations only when withdrawals were tendered for that purpose from the cash management account "under the sole dominion and control of Lender." Id. at 42. Funds deposited in the cash management account were distributed only when "no Event of Default shall have occurred and remain outstanding." Id. Funds collected for the benefit of the State thus flowed through both Deutsche Bank and Mountain West's possession. Moreover, at the time it moved to intervene, the State had a statutory lien in all of Mountain West's property, W. Va. Code § 11-10-12, and had filed a number of notices of tax liens against it in both Harrison and Marion Counties (Dkt. No. 46 at 4 n.3).

Therefore, the State has a significant interest in the subject matter of this litigation, which warrants intervention. As the State contends, it "not only has a direct interest in Defendant's putative 'property,' but also in the 'transaction' between the Defendant and the Plaintiff-Creditor underlying the latter's contract claims" (Dkt. No. 46 at 4). The disposition of this action

will, as a practical matter, affect the State's interest because it will determine who holds the funds that the State now seeks to recover. See Exxonmobil, 264 F.R.D. at 245.

### 3.  Impairment of Ability to Protect Interest

Even though the State has established a significantly protectable interest, it must still demonstrate that "the denial of intervention would impair or impede the applicant's ability to protect its interest." Scardelletti, 265 F.3d at 202. This is a practical analysis that focuses on whether "(1) disposition of the action would put the movant at a 'practical disadvantage' in protecting its interest, or (2) the stare decisis effect of a judgment would legally preclude the would-be intervenor from protecting its interests later." McCarthy, 313 F.R.D. at 26 (quoting Francis v. Chamber of Commerce of U.S., 481 F.2d 192, 195 n.8 (4th Cir. 1973)). Notably, the mere "practical disadvantage of filing a separate suit . . . is not sufficient to satisfy the impairment prong." Id.; see also Comm'n of Va. v. Westinghouse Elec. Corp., 542 F.2d 214, 216 (4th Cir. 1976) (reasoning that a movant's concern that it would be disadvantaged if left out of settlement negotiations is insufficient).

Here, the State certainly could bring another lawsuit seeking to hold Mountain West and Deutsche Bank liable for conversion, and the availability of such a forum militates against finding that the State would be disadvantaged by exclusion from the instant action. See S.E.C. v. Homa, 17 F. App'x 441, 445 (7th Cir. 2001). Nonetheless, the State is unlike other creditors because collected sales taxes are, by statute, considered to be held in trust for the State. Schmehl v. Helton, 662 S.E.2d 697, 702 (W. Va. 2008) (quoting Rock v. Dept. of Taxes, 742 A.2d 1211, 1213 (Vt. 1999)) ("[T]axes like sales taxes are 'commonly termed "trust taxes" because the business withholds or collects the taxes on behalf of the state from a third party and holds them in trust until remittance to the state is due."). As a practical matter then, the disposition of the Property or the payment of a money judgment in this case will affect who holds those funds that not only are due to the State but actually are owned by it. The State will be unable to protect that interest absent intervention.

**4.  Adequacy of Representation**

Finally, the State must establish that its interests are not adequately represented by the existing parties. Scardelletti, 265 F.3d at 202. The "burden of showing inadequacy of representation is

12

minimal." Westinghouse Elec. Corp., 542 F.2d at 216; see also Stuart v. Huff, 706 F.3d 345, 351 (4th Cir. 2013) (imposing a higher burden "where the proposed intervenor shares the same objective as a government party"). "When the party seeking intervention has the same ultimate objective as a party to the suit, a presumption arises that its interests are adequately represented, against which the [movant] must demonstrate adversity of interest, collusion, or nonfeasance." Id.

The State convincingly argues that its interest is inadequately represented by the existing parties. As an initial matter, no presumption of adequacy obtains here because neither of the original parties has the same ultimate objective as the State. Deutsche Bank seeks to prove that Mountain West breached the parties' contract, thus triggering events of default that entitle the plaintiff to the appointment of receivers and eventually a money judgment pursuant to the loan documents. Mountain West must defend against this claim. Moreover, the receivers in this case were appointed to manage the Property "for the benefit and protection of the rights and interests of Plaintiff," not the State (Dkt. Nos. 25 at 2; 26 at 2).

The State, on the other hand, seeks to make a conversion claim against both Deutsche Bank and Mountain West to recover funds that,

by statute, belong solely to the State. Deutsche Bank and Mountain West simply do not share the State's interest in the proper disposition of collected tax funds.[3] At best, each might be expected to minimize its own liability for the delinquent sales tax amount. Therefore, the State has met its "minimal" burden to demonstrate that its interests are not adequately represented, and it may intervene as of right.

**B.   Permissive Intervention**

In the alternative, the Court would exercise its discretion and allow the State to intervene on a permissive basis. Fed. R. Civ. P. 24(b)(1) provides that, "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Although whether to allow permissive intervention is within the sound discretion of the district court, Smith v. Pennington, 352 F.3d 884, 892 (4th Cir. 2003), it must "consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). "[B]ut

---

[3] Tellingly, Deutsche Bank does not contest this straightforward fact. It argues only that it need not protect the State's interest because the State does not have a protectable interest in the litigation (Dkt. No. 41 at 7-8). As set forth above, the latter contention is incorrect.

findings on those factors are not determinative of or sufficient to decide a permissive intervention motion." McHenry v. C.I.R., 677 F.3d 214, 222 (4th Cir. 2012).

Therefore, the Court has discretion to permit a party's intervention upon consideration of whether (1) the motion is timely, (2) there are common questions of law or fact, and (3) intervention will unduly delay or prejudice adjudication of the original parties's rights. Each of these factors weighs in favor of the State's permissive intervention.

1.  **Timeliness**

For the reasons discussed with regard to intervention as a matter of right, the State's motion for permissive intervention also is timely. See Gould, 883 F.2d at 286 ("Both intervention of right and permissive intervention require timely application.").

2.  **Common Questions of Law or Fact**

There is but one critical question of fact from the State's perspective: Is either Deutsche Bank or Mountain West responsible for converting or otherwise holding the sales tax collected by Mountain West but unremitted to the State?[4] As discussed, the loan

---

[4] At the hearing on this matter, the State indicated that it does not know the answer to this question, but seeks targeted discovery to determine where sales tax due to it is being held.

15

documents require Mountain West to maintain a cash management account committed to "the sole dominion and control of Lender" (Dkt. No. 1-1 at 42). Deutsche Bank contends that it faithfully released funds to pay Mountain West's tax obligations both pursuant to the loan agreement and the recent bankruptcy proceedings (Dkt. No. 41 at 6 n.2), but Mountain West has consistently defended against its alleged defaults by blaming Deutsche Bank for inappropriately withholding funds kept in the cash management account. The nature of the original parties' contractual relationship, including who held the State's funds at various times, will undoubtedly be developed in the course of this litigation. Therefore, common questions of fact underlie both the original dispute and the State's claims in intervention.

### 3. Undue Delay or Prejudice

Finally, the State easily establishes that there is no risk of undue delay or prejudice with regard to the original parties. The adjudication of the original parties' rights simply will not be affected by the State's intervention because the State's claims will be governed by the same schedule imposed on Deutsche Bank and Mountain West. Accord <u>Students for Fair Admissions Inc. v. Univ. of N.C.</u>, No. 1:14cv954, 2017 WL 213940, at *4-*6 (M.D.N.C. Jan. 13,

**DEUTSCHE BANK V. MOUNTAIN WEST** 1:17CV75

**MEMORANDUM OPINION IN SUPPORT OF ORDER**
**GRANTING MOTION TO INTERVENE [DKT. NO. 67]**

2017) (requiring that an intervenor comply with the existing scheduling order). Therefore, after considering the relevant factors, the Court concludes that permissive intervention is warranted under the circumstances of this case.[5]

### III. CONCLUSION

For the reasons discussed, because the State carried its burden to establish entitlement to intervene of right or on a permissive basis, the Court **GRANTED** the State's Motion to Intervene in this case (Dkt. No. 36).

It is so **ORDERED.**

The Court **DIRECTS** the Clerk to transmit copies of this Order to counsel of record.

DATED: December 15, 2017.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE

---

[5] It is worth noting that Deutsche Bank makes a fleeting argument that the State's proposed complaint in intervention does not sufficiently allege diversity jurisdiction (Dkt. No. 41 at 9-10). Indeed, courts require "that there exists an independent ground of subject matter jurisdiction" before granting leave for permissive intervention, see Shanghai Meihao Elec., Inc. v. Leviton Mfg. Co., Inc., 223 F.R.D. 386, 387 (D. Md. 2004), and 18 U.S.C. § 1367 divests the Court of supplemental jurisdiction over intervenor claims unless the intervenor also can establish diversity jurisdiction. Critically, however, Deutsche Bank does not contend that the Court actually lacks subject matter jurisdiction, as the State is diverse from both original parties.